UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAMIEN BANKS,

        Petitioner,

v.

JACK KOWALSKI,[1]

        Respondent.

_____/

Case No. 16-CV-14122

HON. AVERN COHN

## MEMORANDUM AND ORDER
## DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS
## AND
## DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

### I. Introduction

This is a habeas case under 28 U.S.C. § 2254. Petitioner Damien Banks

(Petitioner) is a state inmate serving a sentence of 6-20 years for assault with intent to

do great bodily harm less than murder, M.C.L. § 750.84, 6-20 years for conspiracy to

commit assault with intent to do great bodily harm less than murder, M.C.L. § 750.157a

and M.C.L. § 750.84, 15-40 years for armed robbery, M.C.L. § 750.529, and 15-40

years for conspiracy to commit armed robbery, M.C.L. § 750.157a and M.C.L. §

750.529. Petitioner filed a pro se petition for a writ of habeas corpus claiming that he is

incarcerated in violation of his constitutional rights. Respondent, through the Attorney

General's Office, filed a response, arguing that Petitioner's claims are meritless or

procedurally defaulted. For the reasons which follow, the petition will be denied.

_____

[1] The caption is AMENDED to reflect the current warden of Petitioner's
incarceration.

## II. Procedural History

Petitioner was convicted following a jury trial. Petitioner filed an appeal of right. The Michigan Court of Appeals affirmed his conviction. People v. Banks, No. 319889, 2015 WL 6438128 (Mich. Ct. App. Oct. 22, 2015). Petitioner then filed a pro se application for leave to appeal with the Michigan Supreme Court, which was denied. People v. Banks, 499 Mich. 884 (2016).

Petitioner seeks habeas relief on the following grounds:

I.   There was insufficient evidence to convict petitioner in state court of conspiracy to commit assault with intent to commit great bodily harm, armed robbery, and conspiracy to commit armed robbery, in violation of his federal constitutional right to due process.

II.  Petitioner was denied his Sixth Amendment right to a fair trial and Fourteenth Amendment right to the presumption of innocence when the state trial judge introduced jury instructions which diluted the prosecution's burden of proof and shifted the burden to the defense.

III. Petitioner was denied his Sixth Amendment constitutional right to the effective assistance of counsel at his trial, specifically when counsel: (A) failed to effectively impeach the complaining witness; (B) failed to investigate and introduce surveillance video which would have corroborated his actual innocence; and (C) failed to object to the prosecution's use of false testimony and evidence, in violation of due process.

## III. Facts

The material facts leading to Petitioner's conviction are recited verbatim from the Michigan Court of Appeals' opinion, which are presumed correct on habeas review. See 28 U.S.C. § 2254(e)(1); Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009):

Brad Bohen lived down the street from Tiffany Greathouse. After meeting in the neighborhood, Bohen became friends with Greathouse's brother, Maliki Greathouse, and her boyfriend, defendant Banks. On the day in question,

2

Bohen testified that Banks and Maliki were visiting his home when he took a phone call from his attorney. Bohen told his attorney that he had gathered sufficient money to pay a $650 retainer plus additional fees and that he wished to procure his services. When Banks and Maliki heard this conversation, they allegedly looked at each other and left.

Later that day, Bohen left his home with approximately $2,500 in cash in his pocket. He travelled (sic) with his friend Renee Nomer and her two children to Costco and then to T.G.I. Friday's for dinner. While inside the restaurant, Bohen fielded two phone calls from Banks. Bohen alleged that Banks wanted him to purchase some Xanax and Adderall from him. Bohen told Banks that he could meet him at the restaurant. Banks called once and claimed to be outside the restaurant. Bohen could not find him in the parking lot and returned to his table. Bohen testified that Banks called again and claimed to be waiting outside. When Bohen exited the restaurant, he saw Greathouse sitting inside a vehicle in the parking lot. Bohen asserted that Greathouse pointed toward the back of the restaurant.

Bohen walked toward the back parking lot and saw Banks and Lyons standing near the dumpster. Lyons is the boyfriend of Greathouse's mother and Bohen had not met him before the attack. As Bohen approached the men, someone struck him from behind in the head and he fell to the ground. Banks and Lyons ran toward him, and Bohen initially believed they were coming to assist him. However, Banks and Lyons joined the fray, keeping him on the ground, and hitting and kicking him. A young female employee of the restaurant came out at the end of her shift and saw two tall, thin black men wearing hooded jackets beating a white man who was curled on the ground in fetal position. One man was using a "small, blunt object" that "looked like a hammer" to beat the victim in the head. She saw a third man standing watch. She yelled and the men ran away, with one man dropping something out of his pocket along the way. At the end of this encounter, Bohen had only $661 remaining in his pockets.

Bohen was hospitalized for five days and required surgery to remove a shard of his skull from his brain. Investigating officers brought photographic lineups to the hospital for Bohen's review. The first included black and white photographs and Bohen was unable to identify his attackers. In the second lineup, Bohen identified Banks. In a third, Bohen selected Lyons from the array.

Following a joint trial before a single jury and several days of jury deliberations, the jury acquitted the defendants of the greatest charged offenses and convicted them of assault with intent to commit great bodily harm, armed robbery, and conspiracy to commit those offenses. These consolidated appeals followed.

People v. Banks, 2015 WL 6438128, at *1-2.

## IV. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court's decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court shall not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 410-11.

"[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011)(citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a

4

strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 102 (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id. To obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

## V.  Analysis

### A.  Sufficiency of the Evidence

#### 1.  Legal Standard

In his first claim, Petitioner says that there was insufficient evidence to sustain his convictions.  "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In Re Winship, 397 U.S. 358, 364 (1970).  But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318 (1979).  This inquiry, however, does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the

relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Id. at 318-19 (internal citation and footnote omitted)(emphasis in the original).

A federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim merely because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the Jackson standard. See Cavazos v. Smith, 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." Id. For a federal habeas court reviewing a state court conviction, "the only question under Jackson is whether that finding was so insupportable as to fall below the threshold of bare rationality." Coleman v. Johnson, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." Id.

Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. Marshall v. Lonberger, 459 U.S. 422, 434 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. Neal v. Morris, 972 F.2d 675, 679 (6th Cir. 1992). A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. Matthews v. Abramajtys, 319 F.3d 780, 788 (6th Cir. 2003).

6

## 2. Application

Petitioner says that there was insufficient evidence to convict him of conspiracy to commit assault with intent to commit great bodily harm, assault with intent to commit great bodily harm, armed robbery, and conspiracy to commit armed robbery. Petitioner further contends that a larceny did not occur because the victim was left with $ 661.00 in his pocket, his jewelry, and his cell phone. The Michigan Court of Appeals rejected Petitioner's claim.

The elements of armed robbery under Michigan law are: (1) an assault, and (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a weapon. See O'Guin v. Foltz, 715 F.2d 397, 400 (6th Cir. 1983).

Under Michigan law, the elements of assault with intent to do great bodily harm less than murder are: (1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder. See Lovely v. Jackson, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004)(citing People v. Mitchell, 149 Mich. App. 36, 38, 385 N.W.2d 717 (1986)).

Under Michigan law, a conspiracy is defined as "a mutual agreement or understanding, express or implied, between two or more persons to a commit a criminal act." Cameron v. Birkett, 348 F. Supp. 2d 825, 839 (E.D. Mich. 2004)(quoting People v. Carter, 415 Mich. 558, 567; 330 N.W.2d 314 (1982)). "[A] two-fold specific intent is required for conviction: intent to combine with others, and intent to accomplish the illegal objective." Carter, 415 Mich. at 568. Direct proof of an agreement is not required, nor is proof of a formal agreement necessary. Rather, it is sufficient that the

circumstances, acts, and conduct of the parties establish an agreement. <u>People v. Cotton</u>, 191 Mich. App. 377, 393 (1991). A conspiracy may be proven by circumstantial evidence or may be based on inference. <u>Id</u>.

The evidence was sufficient to convict Petitioner. The victim testified he had $2,500 in his pockets when he left his home and went to the restaurant. The victim was assaulted by three persons, one whom he identified as Petitioner. One person hit the victim from behind while the other two men kept the victim on the ground while hitting him with a blunt object and kicking him. After the attack, the victim had only $ 661 remaining in his pocket and had not spent much money shopping. Petitioner and Maliki knew that the victim had a large amount of money because they heard him speaking on the phone with his attorney earlier that day. The jurors could infer from the victim's testimony that he had less money remaining after the robbery and that money had been taken from him during the assault, so as to support the robbery and conspiracy to commit robbery convictions.

The jurors could also infer that Petitioner conspired with the other men to rob and assault the victim. Petitioner and Maliki heard the victim tell his lawyer on the phone that he had a large sum of cash. The victim testified that the two men looked at each other suspiciously and left. Later that day, Petitioner telephoned the victim several times to arrange a meeting. Some of these calls were determined to have come from a cell phone registered to Mr. Lyons. When the victim came outside of the restaurant to meet Petitioner as arranged, three individuals, including Lyons, were there. Petitioner made a signal before someone hit him from behind. The victim testified that petitioner and Lyons then joined in the attack to incapacitate him.

8

In light of the foregoing, the Michigan Court of Appeals' determination that there was sufficient evidence to support Petitioner's convictions for conspiracy to commit armed robbery and conspiracy to commit assault with intent to commit great bodily harm was not an unreasonable application of clearly established federal law. Petitioner is not entitled to relief on his first claim.

## B. Jury Instruction

In his second claim, Petitioner contends that the trial court erred in giving a jury instruction which impermissibly modified the burden of proof. The Michigan Court of Appeals found that Petitioner had waived his jury instruction claim by failing to object at trial. Respondent contends that this claim is procedurally defaulted.

## 1. Procedural Default

A state court conclusion that an issue was waived is considered a procedural default. See e.g. Shahideh v. McKee, 488 F. App'x 963, 965 (6th Cir. 2012). Where a defendant's attorney expresses satisfaction with the trial court's handling of the matter, as was the case here, the claim of error regarding the issue is waived for appellate review. See People v. Carter, 462 Mich. 206, 219 (2000). Because the Michigan Court of Appeals relied on counsel's expression of approval of the jury instructions as given to reject petitioner's claim, the claim is procedurally defaulted. See McKissic v. Birkett, 200 F. App'x 463, 471 (6th Cir. 2006).

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage

of justice." <u>Coleman v. Thompson</u>, 501 U.S. 722, 750-51 (1991). If a habeas petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. <u>Smith v. Murray</u>, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. <u>Murray v. Carrier</u>, 477 U.S. 478, 479-80 (1986). To be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. <u>Schlup v. Delo</u>, 513 U.S. 298, 324 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." <u>Bousley v. United States</u>, 523 U.S. 614, 624 (1998).

This Court is aware that procedural default is not a jurisdictional bar to review of a habeas petition on the merits. <u>See Trest v. Cain</u>, 522 U.S. 87, 89 (1997). In addition, "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." <u>Hudson v. Jones</u>, 351 F.3d 212, 215 (6th Cir. 2003)(citing <u>Lambrix v. Singletary</u>, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." <u>Lambrix</u>, 520 U.S. at 525. "However, where a straightforward analysis of settled state procedural default law is possible, federal courts cannot justify bypassing the procedural default issue." <u>Sheffield v. Burt</u>, 731 F. App'x 438, 441 (6th Cir. 2018), <u>cert. denied</u>, 139 S. Ct. 155 (2018).

### 2.  Application

Here, the Michigan Court of Appeals clearly indicated that Petitioner's claim was waived by defense counsel expressing satisfaction with the jury instructions. <u>Banks</u>, 2015 WL 6438128, at *9. The Michigan Court of Appeals also indicated that the jury instructions as given "comports with former CJI2d 3.2 (now M Crim JI 3.2) and CJI2d 7.8[.]" <u>Id</u>. at *9. As such, Petitioner's claim is waived and procedurally defaulted.

Moreover, Petitioner has offered no reasons for his failure to preserve his claim at the trial level. Although ineffective assistance of counsel may constitute cause to excuse a procedural default, that claim itself must be exhausted in the state courts. <u>See Edwards v. Carpenter</u>, 529 U.S. 446, 451 (2000). Although Petitioner has raised allegations of ineffective assistance on direct appeal and in his petition, Petitioner did not claim on his direct appeal or in his petition that trial counsel was ineffective on this ground. Because Petitioner has never raised in the Michigan courts a specific claim about trial counsel's failure to object to the jury instructions as given by the trial court judge, any alleged ineffectiveness of counsel cannot constitute cause to excuse petitioner's default. <u>See Wolfe v. Bock</u>, 412 F. Supp. 2d 657, 684 (E.D. Mich. 2006).

Further, although Petitioner alleges that the trial court improperly instructed the jury "[Y]ou may use the identification testimony alone to convict the defendant as long as you believe the testimony..," the record reflects that the trial court also informed the jury that they may also "consider whether other evidence supports the identification because it may be more reliable." (ECF 6-19, PageID.1718-1719). The instruction merely informed the jury that corroboration was not required to prove the offense and that the victim's independent testimony was sufficient. Petitioner likewise challenges the trial court's definition of reasonable doubt. However, "[T]he Supreme Court does

not require any particular form of words to be used in advising the jury about the government's burden of proof." Id. (citing Victor v. Nebraska, 511 U.S. 1, 21 (1994)).

In sum, Petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow the Court to consider his second claim.[2]  The claim is denied based on procedural default.

## C.  Ineffective Assistance of Counsel

Petitioner argues that trial counsel was ineffective by 1) failing to sufficiently impeach the complaining witness, 2) failing to investigate and introduce surveillance video which would have corroborated his actual innocence, and 3) failing to object to the prosecution's use of false testimony and evidence.

## 1.  Legal Standard

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland v. Washington, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. Id. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. Strickland, 466 U.S. at 689.  Second,

---

[2]In his reply, Petitioner claims he is innocent because Bohen failed to identify him in the first two photographic arrays.  This is not actual innocence.  Bohen did positively identify petitioner in a third photographic show-up and also positively identified petitioner at trial as one of his assailants.

the defendant must show that such performance prejudiced his defense. Id. To

demonstrate prejudice, the defendant must show that "there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." Strickland, 466 U.S. at 694. The Supreme Court's holding in Strickland

places the burden on the defendant who raises a claim of ineffective assistance of

counsel, and not the state, to show a reasonable probability that the result of the

proceeding would have been different, but for counsel's allegedly deficient

performance. See Wong v. Belmontes, 558 U.S. 15, 27 (2009).

## 2. Application

### 1.

Petitioner first contends that trial counsel was ineffective for failing to impeach

the complaining witness. The Michigan Court of Appeals rejected the claim as follows:

> As noted by Banks, Bohen's testimony suffered from credibility issues.
> Bohen had suffered a closed head injury at some time in the past and as a
> result, experienced short term memory problems. One of the assailants
> dealt Bohen a severe blow to the head that sent a shard of his skull into his
> brain, likely causing additional memory problems. Bohen's version of events
> evolved in the days following the attack, with the victim initially claiming that
> he had blacked out and remembered nothing to ultimately naming Banks
> and Lyons (by their nicknames and through photographic identification) as
> his assailants.
>
> Banks complains that defense counsel should have done more to impeach
> Bohen's credibility on the stand. Decisions regarding how to cross-examine
> and impeach witnesses are matters of trial strategy. Defense counsel did
> cross-examine Bohen in an attempt to discredit his story. Counsel elicited
> testimony from the investigating officers that Bohen appeared to be
> "intentionally withholding information" immediately following the attack. Other
> evidence revealed that Bohen did not name his attackers, despite knowing
> Banks, until the officers discovered that the calls Bohen received had come
> from Lyons's cell phone. Moreover, Bohen did not identify his attackers until
> after his friend, Chris Stege, visited him in the hospital. Despite a previous
> relationship with Banks, Bohen could not identify a photograph of Banks in

the initial black-and-white photographic lineup, suddenly recognizing him in a lineup after Stege's visit. During closing argument, defense counsel argued that Bohen was a drug addict and dealer and was "a liar and a coward." Counsel emphasized Bohen's delay in identifying his attackers and argued the inference that Bohen was being untruthful. In short, the problems with Bohen's testimony were clear and counsel utilized them to argue that his identification of Banks was not credible. The jury nonetheless rejected that argument. Absent any suggestions about further actions that could have been taken, Banks cannot show that counsel's performance was deficient in this regard.

Banks, 2015 WL 6438128, at *9 (internal citation omitted).

The Court agrees with the court of appeals. Trial counsel's performance did not constitute ineffective assistance of counsel where the record shows that defense counsel carefully cross-examined Bohen and in his closing argument emphasized the inconsistencies and weaknesses in his testimony. "Although other attorneys might have reached a different conclusion about the value of cross-examining [Bohen]" in greater detail, counsel's strategic choice not to further cross-examine Bohen was "within the wide range of reasonable professional assistance." Indeed, trial counsel's strategic choice to forego more in-depth cross-examination is "virtually unchallengeable" because he made it after considering the relevant law and facts of the case. Finally, Petitioner has failed to identify how additional impeachment of Brad Bohen would have affected the jury's decision. Trial counsel did not perform ineffectively by not more forcefully cross-examining Bohen, particularly when the effect of further probing was entirely speculative. Habeas relief is not warranted based on this allegation of ineffective assistance.

Petitioner next contends that trial counsel was ineffective by not seeking to admit the video that captured the assault, relying instead on still frames.

14

The Michigan Court of Appeals rejected this claim, stating:

> Banks further contends that counsel should not have stipulated to the admission of still frames from the T.G.I. Friday's video footage and should have fought for admission of the entire video. Unfortunately, as the video footage was not admitted into evidence, it is not part of the lower court record. Nothing in the record suggests that the assailants' faces were ever clearly visible in the footage such that Banks would be exonerated. Based on testimony from the investigating officers, it appears that the footage showed a violent assault perpetrated by two hooded men. Although the assailants could not be identified from the footage, from which counsel could have argued that there existed a reasonable doubt about Banks's guilt, counsel could have feared prejudice to his client from viewing the assault in action. The jury could have reasonably inferred Banks's role from other evidence, including the victim's identification of Banks as one of his assailants, and convicted Banks of a greater charge based on the jurors' viewing of the actual assault footage. Accordingly, Banks has not overcome the presumption that there was a legitimate strategic reason for counsel's objection.

Banks, 2015 WL 6438128, at *10 (Internal citation omitted).

The court of appeals' conclusion is reasonable and not contrary to federal law. A defense counsel has no obligation to present evidence or testimony that would not have exculpated the defendant. See Millender v. Adams, 376 F.3d 520, 527 (6th Cir. 2004)(internal quotation omitted). The video depicted the assailants dressed in hoodies, which prevented the assailants from being identified. Evidence on a video of perpetrators that could not be identified would not have exculpated Petitioner. Petitioner has not presented any evidence on how admission of the video would have exonerated him. Furthermore, the jury acquitted Petitioner of assault with intent to commit murder and conspiracy to commit murder. Trial counsel could have reasonable feared that Petitioner would be convicted as charged, if the jury saw the video of the brutal nature of the assault. The Michigan Court of Appeals reasonably found that trial counsel's failure to push for the admission of the video was reasonable trial strategy.

15

Petitioner lastly contends that trial counsel was ineffective because the complaining witness lied throughout his testimony and that the prosecutor violated petitioner's due process rights by presenting this false testimony.

The Michigan Court of Appeals rejected this claim as follows:

> Although the investigating officers testified that Bohen seemed to purposefully withhold information in the beginning of the investigation, and Bohen's credibility was placed into question on the stand, there is no suggestion that either the officers or the prosecutor had reason to know, or even believe, that Bohen lied when he ultimately identified his assailants. The jury had the necessary information to consider Bohen's memory problems and adjudge his credibility. Accordingly, we discern no ground for granting Banks's relief.

Banks, 2015 WL 6438128, at *10.

The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. Giglio v. United States, 405 U.S. 150, 153 (1972). There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected. Napue v. Illinois, 360 U.S. 264, 269 (1959)(internal citations omitted). To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. Coe v. Bell, 161 F.3d 320, 343 (6th Cir. 1998). However, a habeas petitioner must show that a witness' statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. Byrd v. Collins, 209 F.3d 486, 517-18 (6th Cir. 2000).

Petitioner contends that "Bohen made several written statements to [the] police and testified at [the] preliminary examination prior to trial, and that these statements and testimony was (sic) laced with internal contadictions and were contradictory to each other as well as his trial testimony." (ECF 1, PageID.39).

Mere inconsistencies in a witness' testimony do not establish the knowing use of false testimony by the prosecutor. <u>Coe</u>, 161 F.3d at 343. Additionally, the fact that a witness contradicts himself or changes his story also does not establish perjury either. <u>Malcum v. Burt</u>, 276 F. Supp. 2d 664, 684 (E.D. Mich. 2003)(citing <u>Monroe v. Smith</u>, 197 F. Supp. 2d at 762). A habeas petition should be granted if perjury by a government witness undermines the confidence in the outcome of the trial. <u>Id</u>.

Petitioner has failed to show that the complaining witness committed perjury at his trial. The record reflects that the witness suffered from severe memory loss, which trial counsel highlighted during his cross-examination of this witness. The inconsistencies found with this witness' testimony do not constitute perjury. Therefore, the prosecutor did not violate petitioner's due process rights by failing to correct any perjured testimony.

Petitioner has failed to show that Mr. Bohen committed perjury, thus, counsel was not ineffective for failing to challenge his testimony on the ground that it was perjured. <u>Brown v. Burt</u>, 65 F. App'x 939, 942 (6th Cir. 2003).

Petitioner is not entitled to relief on his perjury or related ineffective assistance of counsel claim.

## VI. Conclusion

For the reasons stated above, the state courts' rejection of petitioner's claims did not result in decisions that were contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts.  Accordingly, the petition for a writ of habeas corpus is **DENIED.**

Furthermore, reasonable jurists would not debate the Court's assessment of petitioner's claims, nor conclude that the issues deserve encouragement to proceed further.  The Court therefore DECLINES to grant a certificate of appealability under 28 U.S.C. § 2253(c)(2).[3] See Slack v. McDaniel, 529 U.S. 473, 484 (2000).

SO ORDERED.

S/Avern Cohn
AVERN COHN
**Dated: 9/25/2019**              UNITED STATES DISTRICT JUDGE

---

[3] "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.